```
                UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF INDIANA
                      HAMMOND DIVISION
```

ANTHONY COPELAND, et al.,        )
                                 )
             Plaintiffs          )
                                 )
      vs.                        )     CAUSE NO. 2:07-CV-95RM
                                 )
CITY OF EAST CHICAGO, INDIANA    )
                                 )
             Defendant           )

## OPINION AND ORDER

This cause came before the court on April 20 for hearing on the motion of Anthony Copeland and the committee to elect Mr. Copeland mayor of East Chicago for a preliminary injunction directing the City of East Chicago to allow a rally for Mr. Copeland in a city park. This order and memorandum are intended to comply with the court's obligations under FED. R. CIV. P. 52(a) to make findings of fact and conclusions of law. For the reasons that follow, the court grants the motion.

The City of East Chicago maintains Veteran's Memorial Park, a city park about a block in size. It is located near city hall, in a residential area, and contains a gazebo. The park was scheduled to be used this year for Easter Egg hunts and an annual festival called the Taste of East Chicago. When an East Chicago high school won the Indiana state Class 4A basketball championship, more than 1,000 persons rallied in Veteran's Memorial Park. The city has historically maintained a policy of disallowing candidates and parties from holding events in any city park.

The Committee to Elect Anthony Copeland for Mayor wanted to use the park for a rally on Saturday, May 5 (3 days before the primary election). Rosa Maria Rodriguez called the parks and recreation department and asked if the park would be available for a May 5 rally involving 200 to 300 people. At first, she was told the park was available, but given the number of people, she would have pay a refundable deposit. Ms. Rodriguez went to the parks and recreation department, filled out a permit form, and paid a permit fee of $30 and deposit of $23.

After some phone calls and conversations, Ms. Rodriguez learned from Parks and Recreation Department superintendent Kenneth Monroe that the rally could not be held because East Chicago does not allow political rallies in its parks or public spaces. The city refunded Ms. Rodriguez's permit fee and deposit.

Mr. Copeland and his committee seek a preliminary injunction, without bond, allowing them to conduct their rally in the park on May 5.

A plaintiff seeking a preliminary injunction must show (1) he is reasonably likely to succeed on the merits, (2) without the injunction, he will suffer irreparable harm that outweighs any harm the nonmoving party will suffer if the injunction is granted in error, (3) there is no adequate remedy at law, and (4) an injunction would not harm the public interest. Christian Legal Society v. Walker, 453 F.3d 853, 859 (7th Cir. 2006). If this threshold burden is met, the court decides whether the balance of harms favors the moving party. Id.

East Chicago doesn't dispute that no adequate remedy at law exists, and "[t]he loss of First Amendment freedoms is presumed to constitute an irreparable

2

injury for which money damages are not adequate, and injunctions protecting First Amendment freedoms are always in the public interest," id., so the plaintiffs meet the third and fourth requirements for a preliminary injunction.

East Chicago is trying to regulate political speech in a public forum. Public parks are "traditional" public fora, which has been defined as a forum that has "traditionally been available for public expression," International Soc'y for Krishna Consciousness, Inc. v. Lee, 505 U.S. 672, 678 (1992); *see also* United States v. Grace, 461 U.S. 171, 177 (1983) ("public places historically associated with the free exercise of expressive activities, such as streets, sidewalks, and parks, are considered, without more, to be 'public forums.'") (internal citation omitted), so the plaintiffs can show a likelihood of success by showing (1) East Chicago's policy "that political Candidates and parties are not permitted to hold rallies or otherwise electioneer in public parks of East Chicago, when the content of their message is to support a specific candidate or party" is an impermissible time, place, or manner restriction, and (2) the policy likely doesn't survive strict scrutiny. Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45 (1983).

A valid time, place, or manner restriction (1) is content-neutral; (2) is narrowly tailored to further substantial government interests; and (3) leaves open ample alternative means for communicating the desired message. Perry Education Ass'n v. Perry Local Educators' Ass'n, 460 U.S. at 45. East Chicago's policy of denying all rallies where the message's content is political support is viewpoint-neutral, but is not content neutral. "'[C]ontent-neutral' speech restrictions [are]

3

those that 'are justified without reference to the content of the regulated speech.'" Renton v. Playtime Theatres. Inc., 475 U.S. 41, 48 (1986). Content-based restrictions are those that restrict speech based on the content of the message. City of Cincinnati v. Discovery Network. Inc., 507 U.S. 410, 428 (1993).

East Chicago says the restriction is content neutral because "[t]his policy has been applied in a neutral fashion irrespective of the party affiliation of a candidate or the content of the candidate's message." In other words, "[t]here is no discrimination between political candidates or political parties — they are all banned from using East Chicago's public parks as a forum for their rallies or events." East Chicago misapprehends the neutrality requirement.

The "First Amendment's hostility to content-based regulation extends not only to a restriction on a particular viewpoint, but also to a prohibition of public discussion of an entire topic." Burson v. Freeman, 504 U.S. 191, 197 (1992); *accord* Hill v. Colorado, 530 U.S. 703, 722-723 (2000) ("Regulation of the subject matter of messages, though not as obnoxious as viewpoint-based regulation, is also an objectionable form of content-based regulation."); Boos v. Barry, 485 U.S. 312, 319 (1988)("[A] regulation that 'does not favor either side of a political controversy' is nonetheless impermissible because the 'First Amendment's hostility to content-based regulation extends … to prohibition of public discussion of an entire topic.'"). In Burson v. Freeman, a Tennessee election law prohibiting display or distribution of campaign materials was deemed a content-based restriction because the statute was concerned only with political speech.

4

Application of East Chicago's prohibition of political rallies turns on whether the rally is advocating a political position or candidate; Burson teaches that such a prohibition is not content neutral within the meaning of the First Amendment.

Even if viewpoint neutrality were the same as content neutrality under the First Amendment, East Chicago's policy is not a valid time, place, or manner restriction because it is not tailored narrowly to further substantial government interests. East Chicago wants to maintain its park as a place of "peace and relaxation for the citizens of East Chicago," lest it "become nothing more than pep rallies for political candidates." East Chicago cites no case for the proposition that protecting people from political speech in public fora is a substantial governmental interest, but assuming East Chicago has a substantial interest in maintaining the parks in a particular manner, *see, e.g,* Clark v. Community for Creative Non-Violence, 468 U.S. 288, 296 (1984) (the government has an interest in regulating competing uses of public space), East Chicago's policy goes much further — it bans all partisan events in city parks. *See* Hill v. Colorado, 530 U.S. at 726 (a time, place, and manner restriction is one that "does not entirely foreclose any means of communication"). Perhaps East Chicago might maintain the park's purpose through a permit system that limits the time, the number of such events, and the number of people permitted at partisan rallies without paying a fee or a higher deposit. Instead, it bans them altogether.

The city's policy is not narrowly drawn in any sense of the term. What it bans lies in the eye of the city legal department. The city allows its parks to be

5

used by elected officials for picnics and community outreach events. It appears from the hearing that if the elected official is running for office at the time of the anticipated event (such as incumbent city councilman Copeland, who is running for Mayor), the city legal department would be asked to determine whether the event is a permissible community outreach event or a partisan event. That undertaking would entail governmental assessment and categorizing the content of what the legal department might expect speakers to say.

As a content-based restriction, the city's policy is "subject to strict scrutiny and [is] presumptively invalid under the First Amendment." Schultz v. City of Cumberland, 228 F.3d 831, 840 (7th Cir. 2000). This standard places upon East Chicago the ultimate burden of justifying the regulation, so Mr. Copeland and his election committee must show today that East Chicago likely can't show the "regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. at 45. They have made that showing. As discussed in the previous paragraph, the city's policy is not narrowly drawn.

A violation of First Amendment rights is presumed to constitute irreparable injury. Christian Legal Society v. Walker, 453 F.3d at 867. "Discussion of public issues and debate on the qualifications of candidates are integral to the operation of the system of government established by our Constitution." McIntyre v. Ohio Elections Com', 514 U.S. 334, 346 (1995). Noting that 52 candidates seek votes in the May 8 primary, the City speculates Mr. Copeland's rally will harm the

6

public because it would "open the proverbial floodgates and permit political candidates and political parties to use the parks for purposes of rallies and events." That speculation cannot counterbalance the injury to the plaintiffs' First Amendment rights. The City mentions no other petitions for use of the park. The only concrete harm for the court's consideration is that of allowing a four-hour rally with 200 to 300 people on a day no one else has reserved the park. It is reasonable to assume the park will see greater use than normal because of Cinco de Mayo celebrations, but the city was willing to allow Mr. Copeland's committee to use the park until it noticed the partisan nature of the planned rally.

The plaintiffs have shown a reasonable likelihood of success on their First Amendment claim and relatively minimal public harm that would result from an injunction allowing a rally on May 5, even if that injunction later found to be in error. The balance of harms weigh in favor of the plaintiffs. Issuance of a preliminary injunction is appropriate.

The plaintiffs ask that the preliminary injunction issue without requirement of a bond because there is no monetary risk to the defendant. The city argues that a $10,000 bond is needed to defray the costs of cleaning the park after the rally, police security, and insurance. Preliminary injunctions are not to be issued without the applicant giving security in such sum as the court deems proper, FED.R.CIV.P. 65(c), but a court has discretion to decide whether a bond or other security is required, Scherr v. Volpe, 466 F.2d 1027, 1035 (7th Cir. 1972), and a party opposing an injunction bears the burden of showing the likelihood of

7

incidental or consequential monetary harm if wrongfully enjoined. Doctor's Associates, Inc. v. Stuart, 85 F.3d 975, 985 (2d Cir. 1996).

The anticipated rally poses a monetary cost, so the city, if wrongfully enjoined, might suffer harm if no bond is posted. But the normal cost of a permit is $30, with a deposit of $23 for large events. This court and other district courts in this circuit has declined to require plaintiffs to post a bond in cases involving constitutional rights, *see* Ogden v. Marendt, 264 F. Supp. 2d 785, 795 (S.D. Ind. 2003): Smith v. Board of Elections Comm'rs for Chicago, 591 F. Supp. 70, 71-72 (N.D. Ill.1984), and have also considered an unincorporated organization's limited financial resources, along with the ordinary wear and tear on parks and the moderate administrative burdens associated with a rally, in requiring only a nominal bond. MacDonald v. Chicago Park Dist., 976 F. Supp. 1125, 1127 (N.D. Ill. 1997) (reversed the granting of a preliminary injunction because the balancing of harms weighed in favor of the defendant).

The city points to the greater need for traffic control for a rally with as many as 300 attendees (the park is near the city's main intersection), the greater need for post-rally clean-up, and potential liability for injuries. The city has not, however, pointed to any instance in which a permit to use the park has been conditioned upon the permittee relieving the city of the cost of traffic control, security, clean-up, or liability.

Given the modest fee the committee would have been charged under a truly content neutral policy, the court orders bond in the sum of $150.

8

For the foregoing reasons, the court GRANTS the plaintiffs' motion for preliminary injunction (docket #3). Upon the posting by the plaintiffs of security in the sum of $150, the defendant shall allow the plaintiffs to conduct their requested rally in Veteran's Memorial Park in East Chicago on May 5, 2007.

SO ORDERED.

ENTERED:   April 23, 2007

/s/ Robert L. Miller, Jr.
Robert L. Miller, Jr., Chief Judge
United States District Court